Hillsborough
No. 7512

JEAN R. VAILLANCOURT
WENDY VAILLANCOURT

v.

CONCORD GENERAL MUTUAL INSURANCE COMPANY

January 31, 1977

Plaintiffs Jean and Wendy Vaillancourt waived filing of brief and oral argument.

*McLane, Graf, Greene, Raulerson & Middleton,* of Manchester, and *Jon Groetzinger, Jr.* (*Mr. Groetzinger* orally) for the intervenor Max Tannenbaum.

*Wiggin & Nourie* and *William S. Orcutt,* of Manchester (*Mr. Orcutt* orally) for the defendant.

KENISON, C.J. This is a declaratory judgment suit, RSA 491:22, seeking a determination of the rights and duties of the parties under a homeowners insurance policy that the defendant issued to the plaintiff Jean Vaillancourt. Max Tannenbaum, intervenor, was injured on November 3, 1968, while riding as a passenger on a snowmobile which the plaintiff was driving. The plaintiff's policy does not provide coverage for bodily injury arising out of the use of automobiles off the premises of the insured. *See* Cunningham & Price, Automobile, Watercraft and Aircraft Exclusion in Homeowners Policy, 41 Ins. Counsel J. 70 (1974). The parties agree that the snowmobile was off the premises of the insured at the time of the accident and that, if the snowmobile is an automobile, the defendant need not provide coverage for the accident. The Trial Court (*Flynn,* J.) transferred the sole question of whether the snowmobile is an automobile for the purposes of the policy.

The intervenor takes the position that, in determining whether a snowmobile is an automobile for the purposes of the policy exclusionary provision, we must consider what a reasonable person in the position of the insured would have understood the term "automobile" to mean. *Sun Ins. Co. v. Hamanne,* 113 N.H. 319, 306 A.2d 786 (1973); *Merchants Mut. Cas. Co. v. Lambert,* 90 N.H. 507, 11 A.2d 361 (1940). He contends that such a person

would not consider a snowmobile to be an automobile as that word is used in its ordinary and everyday sense. Although this argument may have merit, it is inapposite because the insurance contract contains a special definition of the term "automobile" and the language of that definition controls. 13 J. Appleman, Insurance Law and Practice § 7483.25, at 598 (1976). Thus, we must consider what meaning a reasonable person in the position of the insured would give to the words used in the definition of automobile in the policy.

A federal district court's holding that a snowmobile is not an automobile for the purposes of a certain federal statute, *Varney v. Coleman Company, Inc.,* 385 F. Supp. 1337 (D.N.H. 1974), does not necessarily help the intervenor. One court has held that a snowmobile is an automobile for the purpose of uninsured motorist coverage even though the policy defines automobile as "a four wheel land motor vehicle designed for use principally upon public roads." *Oberstar v. State Farm Mut. Auto Ins. Co.,* 301 Minn. 406, 408, 222 N.W.2d 557, 558 (1974). However, that case has been severely criticized as "an attempt to provide uninsured motorist coverage regardless . . . ." 1 R. Long, The Law of Liability Insurance § 4.01, at 43 n.4 (Supp. 1976).

The policy defines automobile as follows: " 'Automobile' means a land motor vehicle, trailer or semi-trailer, but the terms [sic] 'automobile' does not include . . . any of the following: any crawler or farm-type tractor, farm implement or, if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads." There can be little doubt that a snowmobile is a "land motor vehicle" as a reasonable person understands those words. The intervenor does not contend that a snowmobile is a farm-type tractor or farm implement. It is not a "crawler" which is defined as a Caterpillar tractor or "either of the treads of a crawler tractor . . . ." Webster's Third New International Dictionary, Unabridged 531 (1961).

The major disagreement between the parties is whether the snowmobile could be brought outside the definition of automobile by characterizing it as "if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads." The word "equipment" is broad enough to include a snowmobile, and the defendant apparently does not disagree. The parties agree that the snowmobile was designed for use primarily

off public roads. The only remaining question is whether the snowmobile was "subject to motor vehicle registration."

 There is no question that RSA 262:47 applied at all relevant times in this case. That provision states:

> Registration. No snow traveling vehicle shall be operated in this state unless registered under this chapter, except as otherwise provided. No snow traveling vehicle shall be registered until the registrant has obtained a permit to register in the same manner as in the case of motor vehicles as prescribed in RSA 260:22 and pay the fees prescribed in RSA 260:27. The provisions of RSA 262:30 shall not apply. The director of motor vehicles is authorized to register such snow traveling vehicle and issue a registration certificate and assign a registration number plate to such vehicle. . . . The director of motor vehicles shall receive a fee of six dollars for each registration issued hereunder . . . .

The essence of the intervenor's argument is that this provision creates a distinction between "motor vehicle registration" and "snowmobile registration" and that therefore snowmobiles are not subject to motor vehicle registration for the purposes of the policy. We cannot agree with this analysis. RSA 259:1 XVII defines "motor vehicle" as those words are used in Title XXI which includes RSA ch. 260, the motor vehicle registration statute. "Motor vehicle" is defined as "any self-propelled vehicle not operated exclusively upon stationary tracks, except tractors." RSA 259:1 XVII. Clearly, a snowmobile is a motor vehicle under this definition. RSA 260:23 entitled "Scope of the Term 'Motor Vehicle' " slightly modifies the definition in RSA 259:1 XVII by including all trailers, semi-trailers and travel trailers and specifically excluding mobile homes and home trailers. Thus, a snowmobile is still a motor vehicle for the purposes of the motor vehicle registration statute. The fact that the legislature specifically excluded mobile homes and home trailers but not snowmobiles is additional support for our conclusion. *See State v. Wilton R.R. Co.*, 89 N.H. 59, 192 A. 623 (1937); 2A J. Sutherland, Statutes and Statutory Construction § 47.23, .24 (4th ed. C. Sands 1973).

■ A reasonable person in the position of the insured could not have believed that his snowmobile was "not subject to motor vehicle registration" as those words are commonly and ordinarily understood. Under RSA 262:47, a snowmobile owner was required to register his snowmobile with the director of motor vehicles, to follow the same procedures as prescribed by the motor vehicle registration statute, to pay fees prescribed by that statute and so on. The fact that RSA ch. 262 contained these requirements instead of RSA ch. 260, which is entitled "Registration of Motor Vehicles," could not reasonably have given rise to a belief in the insured that his snowmobile was "not subject to motor vehicle registration."

The intervenor points out that in 1969, the legislature amended the definition of motor vehicles in the motor vehicle registration statute, RSA 260:23, to exclude snowmobiles. However, this statute took effect long after the insurance policy was signed and the accident took place. The intervenor responds by arguing that the 1969 amendment did not change the law with respect to snowmobiles but merely clarified the law as it existed at the time of the events in this case. In other words, snowmobiles were not subject to motor vehicle registration in 1967 when the policy was signed and 1968 when the accident occurred, and the legislature made this clear by amending the statute in 1969.

We cannot agree with the intervenor that the 1969 amendment merely clarified the law as it existed prior to the amendment. The legislature in 1969 completely revised the registration requirements for snowmobiles. It shifted the authority to register snowmobiles from the director of motor vehicles to the commissioner of safety. Laws 1969, 488:1. The 1969 registration provision makes no reference to, nor in any substantial way resembles, RSA 262:47, the snowmobile registration provision operative at the time of the events in this case. Only when the legislators made snowmobile registration completely independent of motor vehicle registration did they exclude snowmobiles from the definition of motor vehicles in RSA 260:23. The only inference we can draw from these radical changes in the law is that, prior to 1969, snowmobiles were definitely subject to motor vehicle registration. Thus, although a snowmobile fits within the exception to the definition of automobile in the insurance policy to the extent that it is "equipment which is designed for use principally off public roads," it was subject to

motor vehicle registration in 1967 and 1968 and therefore does not completely fall outside the definition of automobile.

Because the snowmobile in this case was a land motor vehicle and not completely within any of the definitional exceptions in the policy, it was an "automobile" and therefore not covered under the insurance contract. Our holding is consistent with one authority who, in discussing a policy provision substantially identical to the one in question, stated "[r]ecreational vehicles such as snowmobiles, golfcarts and the like come within the scope of the homeowner's policy coverage only so long as they are on the insured's premises or ways immediately adjoining." Cunningham & Price, Automobile, Watercraft & Aircraft Exclusion in Homeowner's Policy, 41 Ins. Counsel J. 70, 71 (1974). Even the Fire, Casualty & Surety Bulletin, Casualty & Surety Iap-12 (Oct. 1968 and June 1970), cited by the intervenor, makes clear that snowmobiles were not covered by the standard homeowner's policy in effect at the time of this accident if such vehicles were subject to motor vehicle registration.

We need not decide whether to take judicial notice of the materials presented to us by the intervenor in his comprehensive and exhaustive brief because, even if they were proper subjects for judicial notice, consideration of them would not have altered the outcome of the case.

*So ordered.*

DOUGLAS, J., did not sit; the others concurred.